Good morning, Your Honor. Good morning. May it please the Court. My name is James Nurgam Law and I represent petitioners Manuel Flora, Josie Flora, and Mark Flora, who are present in the courtroom today. Also seated at counsel table is my co-counsel, Mr. David McCullough. The Court is already fully aware of the legal arguments as contained in our briefings. We have also informed the Court that an immigration visa petition has been approved for Mr. and Mrs. Flora. You may want to go fairly early as to why they are not parolees. Don't you say they're not? Actually, Your Honor, the crux of the argument is that they are not arriving aliens. They have, and to answer your question, they have been paroled, but they are not arriving aliens. And this is exactly what we asked this Court to find. So you concede that they were parolees, that they have any other status other than parolees? Do you concede that point? They were paroled into this country, Your Honor. Correct. But what we're arguing today, and it is the only obstacle preventing them to adjust status to legal permanent residence as we speak today, is the finding by the judge, or the upholding of the allegation, that they are arriving aliens. Okay. So if we agree with you that they are arriving aliens, then they will be able to fully process their I-130 petitions? Is that what you're seeking? Your Honor, if you find that they are not arriving aliens, and they are applicants for admission, they will be able to proceed under adjustment of status into legal permanent residence. And that's the crux of our argument today. Indeed, an interview has been scheduled at the Honolulu immigration offices for Mark Thora and his wife, Sherry, who's also in the courtroom today, who have filed an immigration petition. And based on a bona fide marriage, we have no reason to believe that this petition will not also be approved. Indeed, the only argument, as I mentioned, that the government has to prevent the adjustment of status to legal permanent residence is that they are arriving aliens. As argued in our pleadings, the arriving alien concept did not exist when the Flores entered into this country in 1986. It did not exist when their humanitarian parole was terminated in 1992. And it did not exist when they were re-paroled to pursue asylum claims. Counsel, what's your response to the government's position that under 8 CFR Section 1.1Q, an arriving alien remains such even if paroled pursuant to Section 212 D-5? Specifically, Your Honor, as outlined in our brief, our response is that the Attorney General exceeded his authority by enacting a regulation under that particular CFR and took away a form of relief that Congress by itself did not take away. An act of Congress and it's... So your argument is, if we do not accept your argument that the Attorney General exceeded his authority in enacting 8 CFR Section 1.1Q, you lose. Could you rephrase the question? If we do not accept your argument that the agency exceeded its authority in enacting 8 CFR Section 1.1Q, you lose. Is that true? No, Your Honor, it is not true. Why not? It is not true because the whole premise of the arriving alien classification was not in effect at the time they entered the country or where their paroles were or they were re-paroled to pursue their asylum claims. Indeed, I would like to point out to the Court, in all other Marcos Entourage cases, the members were subjected to exclusion proceedings and they were entitled under exclusion proceedings to adjustment of status before the district director. The Flores are the only ones to have the misfortune of being placed in proceedings pursuant to the reforms under the ERA-ERA and thus find themselves subject to this arriving alien classification. This is fundamentally unfair. It disturbs settled expectations. And on that basis, we ask this Court to not find them arriving aliens. And indeed, Congress has not expressed any intent that the classification of arriving aliens be applied retroactively. Indeed, this Court has stated that absent expressed intent, retroactive effect will not be given to a statute. We respectfully submit that the Attorney General should be subject to no less of a statute. Your Honor, this Court knows the unique circumstances as described in our pleadings. That the Marcos Entourage came into this country, circumstances that hopefully will not likely be repeated. This case will not, by finding them not to be arriving aliens, that finding will not open the floodgates to unwanted foreign nationals. What would be the basis for our finding? I gather from what you've argued and from your brief, you would say that the term didn't exist at the time, that the legislature that described the term arose subsequent to their arrival, so that while it might apply prospectively, it doesn't apply retroactively. And if it doesn't apply retroactively, then they are what? If it doesn't apply retroactively, then they are what? They are considered applicants for admission, and under the old 8 CFR before revised, allowed applicants for admission to adjust status. That is exactly what we ask this Court to do. That is the remedy available, and the Court holds it in its hands. As I mentioned before in all other Marcos cases, we hold it in our hands if it applies, we won't hold it if it doesn't apply. And I respectfully submit that we have provided the Court with legal arguments and factual argumentation about why it should apply. But let's look at the consequences if this Court chooses not to grasp the relief that's before it. Mother, father, and their son will be separated and imprisoned in the Federal Detention Center in Honolulu. They will not be placed aboard a plane to leave immediately for the Philippines. Rather, on the INS's clock, they will be deported as scheduled at the government's convenience. Counsel, that could be avoided if we allow voluntary departure. But this goes back to the central finding, and indeed the reason why we ask this Court not to find them arriving aliens. Pursuant to the regulations, arriving aliens are not entitled to voluntary departure. They must leave. That's an additional hardship that this Court must consider. They must leave under an order of deportation, which carries with it the stigma of a 10-year bar before they can seek reentry into the United States. And that emphasizes our central point. We are asking this Court for the relief that is within its reach, declaring the florist not to be arriving aliens and applying the law as consistent with the rest of the Marcos Entourage cases, allowing them to adjust. What case do you think is most persuasive in terms of your argument that your clients should not be treated as arriving aliens? What case do you think is most persuasive? The most persuasive case is the case Chang v. The United States, which we cited in our reply brief. It stands for the proposition that congressional statutes shall not be applied retroactively. Do you have a case specifically that says? And actually, Your Honor, forgive the interruption, but it also goes on to hold that subsequent changes to INS rules should not be applied to, in that case, EB-5 investors. Okay. So you don't have a case specifically that says parolees should not be treated as arriving aliens? Do you have a case that says that? No, Your Honor. This is a case of first impression. Do you want to save some time for rebuttal? Yes, if I may. One minute for rebuttal. Thank you, Your Honor. If it may please the Court, Anthony Payne on behalf of the United States Attorney General. The question of arriving alien is not for this Court. As counsel has pointed out, that applies to adjustment of status. Adjustment of status was not an issue before the immigration judge or the board. The proper means for obtaining adjustment of status would be to file a motion to reopen. However, there's been no indication that a motion to reopen was filed in this case, and because the issue was not present before the board or the immigration judge, the alien has D-1. This Court lacks jurisdiction over the adjustment of status claim. So what is the bottom line, so far as you're concerned, for this situation? The bottom line for this Court is whether or not substantial evidence supports the issues that were before the board and the immigration judge. So the removal? Yes, the question, and counsel has already conceded that the Florida's were paroled into the country. Let's assume they were paroled into the country. Yes. Let's assume that the immigration judge says you're going to be deported, and that means you're going to our facility until we send you out. And we say they are not arriving aliens, so they can voluntarily depart, even though you say it doesn't. So we look at all the facts of the record. The arriving alien determination has absolutely no applicability to the IJ's finding of removal in this case. Why were the applications for voluntary departure denied? If I recall correctly, Your Honor, well, if I may speak first, the Court lacks jurisdiction to review that question. As this Court has found in Montero, I forgot the last name, Your Honor, essentially under Section 240 of the INA F-2, I believe, the Court said it lacks jurisdiction over To review voluntary departure in all instances? In all instances, discretionary or discretionary. The only question before the Court is whether or not the immigration judge correctly found the floras removable and whether or not substantial evidence supports the denial of asylum. As counsel has conceded, the florases were paroled into the country. That parole was terminated. Whether he concedes it or whether he doesn't, the fact is that they were paroled into the country. I don't think you're relying upon any concession. No, absolutely not. Substantial evidence supports in the record. We started off by asking him to tell us why they were not because the record makes it so clear. Right, because much of the administrative proceedings was based on the claim that they were refugees. But they can voluntarily depart, maybe. No, they cannot. What is the reason for that? This Court, under all its decisions, cannot grant voluntary departure. The Court can extend voluntary departure based on its recent decision. Well, we can remain and let the question of voluntary departure be raised. But the Court has absolutely no jurisdiction over the determination of voluntary departure. Jurisdiction is power to act. And this case is properly before this Court at this time, isn't it? But not the issue of voluntary departure. I'm asking you one question at a time. Yes, absolutely, Your Honor. The case is properly before us. Yes, Your Honor. And we have an obligation for the case is properly before us to look at the record to see what it reflects. Don't we? I believe, Your Honor, that the first obligation of the current Court is to its jurisdiction to determine jurisdiction. Well, you have jurisdiction over this petition for review. The issues raised in the petition for review is properly before us for decision. Pursuant to 8 U.S.C. 1252. Absolutely, yes. When we look at this case, we can see there's been no determination of adjustment of status. Don't we see that on this record? Oh, absolutely, because there was no adjustment of status application followed. But is an adjustment of status a right of an immigrant who is in this country? Well, it's a discretionary right. It's certainly not a constitutional right. It's a discretionary right. And we can see that it hasn't happened. So the record is before us. We're to make a decision. We don't make the wrong decision just because the Attorney General says to us, wait a minute, you have jurisdiction to decide this, you have jurisdiction to decide that. When a case is properly before us and we have jurisdiction in the case, we can't be compelled to reach a wrong result, can we? Unless there's something that I don't know. Well, you tell me. Congress defines this court's jurisdiction over immigration matters. And Congress has said, and this court has said, that it lacks jurisdiction over the grant of voluntary departure. Tell me the case you're relying upon that we have decided that issue. I'm not recalling a case that says that. I believe it is Montero-Martinez, Your Honor. And it's in the discussion of cancellation of removal. It's in your brief. I don't believe so, because this was not an issue raised during briefs. I can provide the 28-J if the court would like. I don't know why it's necessary, because the case in which we said we didn't have discretion was not a case that arose under the posture of this case. This is unique, isn't it? Well, all cases are unique, yes, Your Honor. However, there's no need to try to discuss cases with a counsel who wants to have a good time. I mean, we can sit down. You think anybody who's been on the bench for 34 years doesn't know that all cases are unique? Well, it's true, Your Honor. Well, are you helping us with that statement? Or is that not your intention? No, it is my intention to help the court. Then you follow our question, but I'll stop asking. I'll take up the burden. Are you contending that they are? Are they arriving aliens or not? Are they arriving aliens? Yes, they are, Your Honor. Now, I look at the statute. It's an applicant for coming or attempting to come into the United States at a port of entry. Is that what they call it? There are several things. Are you looking at the regulation, Your Honor? I'm looking at the statute. I'm sorry. It's the CFI. Sorry. It's the regulation. So there are several different provisions. Have you got them in front of you? Yes, Your Honor. Well, what's the applicable one, then? The petitioners are an arriving alien because they were paroled into the country. No. Where do those things fit in the statute, in the regulation? Those things being? Well, where does what they did fit within the words of the regulation? They are an arriving alien because they are applicants of admission for admissions because their parole status has been terminated. They're applicants for admission, but what are they doing? Are they coming into the country? They're here, aren't they?  Well, that's a fact. They're here. Legally, they are in the status of seeking entry into the country. That is what parole does. Parole allows somebody to come into the country, but legally they are still seeking to enter the country. That is the definition of parole. So that is why they are arriving aliens. Is counsel correct in his statement that the definition of arriving aliens is legislation that is subsequent to their arrival as parolee? Well, Your Honor, that's a red herring because they would seek to use the arriving alien definition. Your answer to that question is yes. He says red herring, so I gather you're saying yes, he's correct in his allegation that that legislation is subsequent to their arrival, to their being admitted into the country as parolees. Well, my argument is simply this. His argument is a red herring because it's not at issue in this case. If we were to assume it's at issue, was the regulation enacted before or after they hit the shores of the United States? In terms of when they were paroled? That's why I used the phrase. When they hit the shores of the United States, was this regulation in effect? It was not applicable. Had it been enacted? No, Your Honor, not that I'm aware of. That's the point we were trying to make. We just wanted a dateline. If I may just conclude, the reason I said that was a red herring is they seek to use this definition to adjust status today, not when they first hit the shores. They're seeking adjustment of status today. That's why this regulation applies to the Floreses today. Let me ask you this. Are you saying that the appropriate thing for the Flores to do is to move to reopen the proceedings? It would have been, but... It's untimely. Yes, exactly. Unfortunately. All right. I understand your position. Your Honor, just to clarify a couple of key points. The Flores, as a matter of record, are parolees, despite contentions by counsel. And I point to page 03. He's not suggesting that they're not parolees. He's just saying that what applies says that they are not admitted. He says they're still arriving, whatever that phrase is. And, Your Honor, in response to that, I point to 8 U.S.C. 1255, which is an act by Congress, and it says parolees, I'm paraphrasing, are entitled to apply for adjustment of status. The only thing... He says that it's too late. He acknowledges that they could apply. But they should have done it before now. Now, what do you say to that? Your Honor, as you can readily see in our supplemental briefs to this Court, the avenue for that relief just opened up two weeks ago. That is why we raise it before this Court. Well, that's what he's saying. You're a victim of bad timing. And that doesn't give you entitlement to the status just because the timing worked against you. Well, what gives us entitlement to that status is all the other Marcos Entourage cases were prosecuted under exclusion proceedings, which allowed adjustment of status as a remedy. And, indeed, in those cases, when adjustment of status was available, they adjusted. But, counsel, the problem is your clients have the same problem as a lot of people who fall under the new immigration law provisions. It's not as forgiving as it was when the other Marcos Aravis were processed. Yes, and we respectfully submit that it's not as forgiving, and it should not apply, because it was in effect at the time they entered this country, and they do emphasize, and I wish to emphasize this to the Court, they do continue to be parolees. The only bar to adjustment of status, as I said previously, is that they are classified as arriving aliens, which is the reason why they were precluded from voluntary departure. We understand that. Thank you to counsel for the argument. In the case this argument stands submitted, this Court will be in recess for 10 minutes. Thank you.
judges: Farris, Noonan, Rawlinson